IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CASSANDRA McGUIRE, | ) |
| Plaintiff, | ) |
| | ) NO. 3:19-cv-00902 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| HIGHMARK HOLDINGS, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff Cassandra McGuire, a Tennessee resident, filed a *pro se* complaint against Highmark Holdings, Enfield Management, Robbie King, and Glenda Shamwell. (Doc. No. 1.) Plaintiff also filed an application to proceed in this Court without prepaying fees and costs (Doc. No. 2), as well as supplements to the Complaint regarding her medical condition (Doc. No. 4) and damages (Doc. Nos. 5 and 6). The Complaint is before the Court for an initial review.

**I.    Application to Proceed as a Pauper**

The Court may authorize a person to file a civil suit without paying the filing fee. 28 U.S.C. § 1915(a). Although Plaintiff does not calculate her total monthly expenses and income (Doc. No. 2 at 2, 5), it appears that she does not have sufficient financial resources to pay the $400.00 filing fee in advance. Accordingly, Plaintiff's application (Doc. No. 2) will be granted.

**II.   Initial Review**

The Court must review and dismiss any action filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). The Court must also construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir.

2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the factual allegations as true unless they are entirely without credibility, *see Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

### A. Factual Allegations

In the "Statement of Claim" section of the Complaint form, Plaintiff writes "see attached pages." (Doc. No. 1 at 4.) There are about eighty pages attached to the Complaint, and most appear to be supporting exhibits. (*See id.* at 11–85.) The five pages immediately following the Complaint contain some factual allegations, but there also, Plaintiff incorporates some exhibits by reference. (*Id.* at 6–7, 9–10.) For the purpose of conducting an initial review, the Court has liberally construed the Complaint and incorporated exhibits to establish the following summary of alleged events. The following alleged facts are taken as true for purposes of this initial screening.

#### 1. Whispering Oaks Apartments

Enfield Management Company, LLC ("Enfield Management") manages property in Nashville, Tennessee, including Whispering Oaks Apartments ("Whispering Oaks") and Biltmore Place Apartments ("Biltmore Place"). (*Id.* at 36.) On August 27, 2017, Enfield Management hired Plaintiff as a leasing consultant and assigned her to work at Whispering Oaks. (*Id.* at 13–15, 36.) While at Whispering Oaks, Plaintiff and five other residents had known disabilities. (*Id.* at 6.) These were "[m]ainly anxiety disorders," (*id.*), and Plaintiff herself has anxiety and a "chronic blockage in [her] heart." (*Id.* at 10.)

A resident was "not allowed to report drug activity due to his disability." (*Id.* at 6.) Other Whispering Oaks employees treated lease applicants improperly in several ways. This includes not allowing one applicant "to fill out an application due to her anxiety," and asking her "to provide a full deposit" that was unnecessary for the application process. (*Id.*) Nell, an assistant manager,

"taunted" an applicant who "was not competent to Nell's . . . standards," "ridiculed" an applicant "for her hair," and "laughed at" an applicant who "could not speak English." (*Id.*) Nell's conduct "resulted in a meeting." (*Id.*)

Plaintiff's co-workers called her a "harasser" and "intimidator" and attacked her in meetings. (*Id.*) This behavior "was accepted by man[a]gers." (*Id.*) "[T]he manager notes" reflect that her co-workers' conduct "was to be portrayed as a personality conflict, not anything else." (*Id.*) In addition, Enfield Management refused to train Plaintiff. (*Id.* at 7.) Plaintiff eventually sent the owner of the company an e-mail stating that she "couldn't breathe." (*Id.* at 6.)

### 2. Biltmore Place Apartments

At some point, Enfield Management transferred Plaintiff to work at Biltmore Place. (*Id.* at 37.) Here also, management was "aware of [her] disability." (*Id.* at 8.) Juan, a manager at Biltmore Place, persistently complained about "law, illegal activity, people with money, poor people, section 8 residents, the residents in general, the District Manager, and" an acquaintance of Plaintiff's who was an attorney in another state. (*Id.*) Juan was negligent as to public safety and "potential danger [to] children," and Juan "harassed" Plaintiff with this negligence on a daily basis. (*Id.*)

Plaintiff was "asked to stop performing . . . inspections" regarding fire safety and mold. (*Id.*) Plaintiff was also told to ignore "meth in homes with children." (*Id.*) Even though employees were not allowed to "harass" or "have negative conversations about" the residents, employees did so "daily." (*Id.*) Applicants were supposed to verify residential history through a manager or district manager at their previous apartment, but one applicant was instead allowed to use hand-written notes to "override" this verification. (*Id.*) Additionally, this applicant "was allowed to have

a negative balance without 75% of the balance being paid off," despite the fact that other applicants were "immediately denied" on this basis. (*Id.*)

Plaintiff "attempted to speak with a housing [a]ttorney" regarding her concerns about the use of improper documents in the application process, but Plaintiff "was ignored." (*Id.*) Plaintiff reported, to her manager and the district manager, her concerns about "public safety," "government funds," and "documents that were being used and were against the application process". (*Id.*) On February 6, 2018, Plaintiff emailed the owner regarding her concerns.[1] (*Id.*) The owner received the email and forwarded it to another employee, stating that Plaintiff "needed to be let go of that day."[2] (*Id.* at 8, 25.)

### 3. Termination of Employment

Enfield Management terminated Plaintiff's employment on February 14, 2018, following a conversation "that was supposed to be to clarify chain of command." (*Id.* at 8.) Plaintiff was terminated for her "inability to get along with others" (*id.* at 7) and for "not turning [her] head to the risk" of the conditions at Biltmore Place (*id.* at 8). Upon her termination, Enfield Management offered Plaintiff "a $3480.00 separation package in exchange for a release of all claims." (*Id.* at 84.) This was a "retaliation check that was supposed to be for being unhappy, not to keep my mouth shut." (*Id.* at 7.)

### 4. Tennessee Human Rights Commission Proceedings

Plaintiff filed a discrimination complaint with the Tennessee Human Rights Commission ("THRC") on or about April 26, 2018. (*Id.* at 36.) As Respondents, Plaintiff named Highmark

---

[1] Based on emails attached to the Complaint, it appears that Plaintiff is referring to Defendant Robbie King as the "owner." (Doc. No. 1 at 22–23, 25–26.) These emails reflect that Plaintiff expressed concerns to Defendant King on February 2 and 7, 2018 (*id.*)—not February 6.

[2] An attached email reflects that Defendant King forwarded Plaintiff's February 7 email to Defendant Glynda Shamwell. (Doc. No. 1 at 25.)

Biltmore, LP, Enfield Management, Robbie King, and Glynda Shamwell. (*Id.* at 64.) The latter three Respondents are named as Defendants to this action. (*Id.* at 1.) It appears that Plaintiff also intended to name the first Respondent—Highmark Biltmore, LP ("Highmark")—as a Defendant to this action by suing "Highmark Holdings." (*Id.*) Highmark owned Biltmore Place Apartments (*id.* at 36), but it is unclear from the documents currently before the Court whether Highmark also owned Whispering Oaks Apartments.

The THRC "accepted and investigated" Plaintiff's discrimination complaint "as a housing complaint" because Plaintiff "specifically stated that [she] challenged [her] employer's fair housing policy." (*Id.* at 62.) Plaintiff also used "the housing section of the complaint" to "mark[] race as a basis of discrimination and indicate[] that [she was] retaliated against because of opposition or objection to discrimination." (*Id.*)

In the discrimination complaint, Plaintiff asserted that the Respondents "subjected her to unlawful retaliation" in violation of the Fair Housing Act ("FHA") and the Tennessee Human Rights Act ("THRA"). (*Id.*) Plaintiff specifically alleged that the Respondent terminated her employment after she reported discriminatory conduct, including disparate treatment of rental applications based on race. (*Id.* at 36–37.) The Respondents, by contrast, stated that Plaintiff was terminated due to "her behavior during [a] February 8, 2018 meeting, her failure to follow the chain-of-command, and her inability to get along with her co-workers." (*Id.* at 38.)

On August 9, 2019, the THRC issued a "Notice of Determination" reflecting that there was "no reasonable cause to believe that the Respondents have engaged in a discriminatory practice." (*Id.* at 36–40, 64–65.) The THRC found evidence that Plaintiff engaged in protected activity by reporting potential violations of fair housing laws, and that the Respondents took an adverse action against her by terminating her employment. (*Id.* at 38.) But the THRC determined that there was

not "sufficient evidence to suggest that there was a causal connection between" these two events. (*Id.* at 38–39.) The THRC also "did not find sufficient evidence that the Respondents violated" the FHA or THRA. (*Id.* at 39.)

When Plaintiff received the THRC's no-cause determination, she contacted the THRC to "question[] that [her] allegations involved employment discrimination"—not just housing discrimination. (*Id.* at 62.) In a letter, the THRC informed Plaintiff that it conducted "[a]nother review" and "determined it properly and thoroughly investigated the discrimination charge under the correct statute." (*Id.*)

Plaintiff then filed a request that the THRC reconsider its no-cause determination. (*Id.* at 63.) On September 25, 2019, the THRC issued a favorable "Notice of Determination After Reconsideration" reflecting that "there is reasonable cause to find that Respondents discriminated against [Plaintiff] by terminating [her] for engaging in a protected activity under the Fair Housing Act." (*Id.* at 63, 77–81.) In doing so, the THRC reconsidered two of the Respondents' stated "legitimate non-discriminatory reason[s]" for firing Plaintiff, and "found sufficient evidence to suggest that there was a causal connection between the [Plaintiff's] protected activity and her termination." (*Id.* at 80.)

First, as to Plaintiff's asserted failure to follow the chain of command, the THRC found this reason to be "weak" because Plaintiff was terminated "within days of sending the . . . emails" that went outside the chain of command. (*Id.*) Second, as to Plaintiff's asserted inability to get along with co-workers, the THRC noted "there was no evidence indicating that [Plaintiff] was disciplined for her issues with her co-workers." (*Id.*) The THRC also stated as follows: "This investigation suggests that the Respondents violated Section 818 of Title VIII of the Civil Rights

Act of 1968 as amended by the Fair Housing Act of 1988 or violated Section 4-21-301(a)(1) and 4-21-601(d) of the Tennessee Human Rights Act." (*Id.* at 81.)

B.   **Standard of Review**

To determine whether a complaint "fails to state a claim on which relief may be granted" under 28 U.S.C. § 1915(e)(2)(B), the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

C.   **Discussion**

Plaintiff asserts that the Court has federal question jurisdiction over this action. (Doc. No. 1 at 3.) In the space on the Complaint form to "[l]ist the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case," Plaintiff writes as follows: "Civil Rights Violations, housing, discrimination, harassment, retaliation, wrongful termination, whistle blowing[.] See attached sheets[.]" (*Id.*) Thus, Plaintiff does not specify the statutes under which she brings this case. But because the pages immediately following the Complaint expressly incorporate the attached exhibits, and most of these exhibits seem to relate to

Plaintiff's state administrative proceedings, the Court liberally construes the Complaint to assert the same claims that Plaintiff raised in her discrimination complaint with the THRC.

1.   **FHA and THRA Claims**

Plaintiff's THRC complaint asserted that Highmark, Enfield Management, Robbie King, and Glynda Shamwell retaliated against her in violation of the Fair Housing Act and Tennessee Human Rights Act. Specifically, Plaintiff asserted that she was fired after she contacted Defendant King with concerns about allegedly discriminatory housing practices.

"Tennessee courts have held that the legislature intended the Tennessee Human Rights Act to be coextensive with federal civil rights laws, and the Tennessee Supreme Court looks to federal interpretation for guidance in interpreting the THRA." *Guevara v. UMH Props., Inc.*, No. 2:11-cv-2339-SHL-tmp, 2014 WL 5488918, at *3 (W.D. Tenn. Oct. 29, 2014) (citing *Parker v. Warren Cty. Util. Dist.*, 2 S.W.3d 170, 172 (Tenn. 1999). The Court therefore applies the same analysis to "housing discrimination claims under . . . the FHA and the THRA." *Id.*

The FHA prohibits discrimination because of race, color, religion, disability, sex, familial status, or national origin in refusing to rent, refusing to negotiate to rent, or "otherwise mak[ing] unavailable or deny[ing]" housing. 42 U.S.C. §§ 3604(a), (f)(1); *see also* Tenn. Code Ann. § 4-21-601(a)(1) (reflecting the same under the THRA). The FHA also has an anti-retaliation provision that "protects plaintiffs who 'aided or encouraged' the housing rights enumerated in the statute." *Linkletter v. W. & S. Fin. Grp., Inc.*, 851 F.3d 632, 637 (6th Cir. 2017) (quoting 42 U.S.C. § 3617); *see also* Tenn. Code Ann. § 4-21-301(a)(1) (THRA anti-retaliation provision). This provision is "meant to protect assistance and advocacy for Fair Housing Act rights." *Id.* at 639. The FHA's scope, therefore, "extends to employers who cancel [an employee's] contract[] in retaliation for

Fair Housing Act advocacy." *Id.* at 638 (citing *Walker v. City of Lakewood*, 272 F.3d 1114, 1128–30 (9th Cir. 2001)).

Here, taking Plaintiff's factual allegations as true and liberally construing them in her favor, the Court concludes that Plaintiff has stated a colorable retaliation claim under both the FHA and THRA. It is unclear at this point whether Plaintiff will ultimately prevail on these claims. Rather, at this stage, the Court concludes that Plaintiff's FHA and THRA retaliation claims survive the required screening of actions filed *in forma pauperis*. These two claims, therefore, will be referred to the Magistrate Judge for further development.

### 2. Dismissal of Any Other Potential Claims

As to any other causes of action Plaintiff may be seeking to pursue in this case, Plaintiff fails to state a claim at this time. Although the Court holds *pro se* complaints to a "less stringent standard" than pleadings prepared by attorneys, this standard still requires "'more than bare assertions of legal conclusions. . . to satisfy federal notice pleading requirements.'" *Perry v. United Parcel Serv.*, 90 F. App'x 860, 861 (6th Cir. 2004) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.3d 434, 436 (6th Cir. 1988)).

Here, in the space for "specific federal statutes . . . at issue in this case," Plaintiff merely lists a series of topics and refers the Court to the "attached sheets." (Doc. No. 1 at 3 ("Civil Rights Violations, housing, discrimination, harassment, retaliation, wrongful termination, whistle blowing See attached sheets").) The sheets immediately following the Complaint, meanwhile, do not clearly explain the specific state or federal law under which Plaintiff is bringing this case. For instance, one sheet states "Negligence - Failure to take proper care in doing something" (Doc. No. 1 at 6), and another sheet asserts that the Second Circuit Court of Appeals has held that "inability to get along with others is covered under [the] ADA" (*id.* at 7). Additionally, about sixty pages

after the Complaint, Plaintiff attaches legal research on several federal statutes. (Doc. No. 66–68.) It appears that Plaintiff prepared this research in the course of negotiating a resolution to this action before she filed the Complaint in this Court. (*Id.* at 69 ("If we go federal, I will address these federal issues.").) Plaintiff's passing reference to these potential causes of action, without supporting them with factual allegations of identifying the Defendant or Defendants to whom they apply, is insufficient to state a claim. *See Perry*, 90 F. App'x at 861 (citing *Scheid*, 859 F.2d at 436) ("[T]he less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations.").

The sheets immediately following the Complaint expressly incorporate the attached exhibits, and the Court has liberally construed this as an effort to assert the same claims here as asserted before the THRC. It would be inappropriate to construe the Complaint any further, even under the standards for *pro se* pleadings. *See id.*, 90 F. App'x at 860–61 (affirming dismissal of *pro se* complaint asserting wrongful termination where plaintiff did not "identify any specific state or federal law that was violated with respect to his employment being terminated").

### III. Conclusion

For these reasons, Plaintiff's application to proceed *in forma pauperis* will be granted, and Plaintiff's claims for retaliation under the FHA and THRA will be referred to the Magistrate Judge for further proceedings consistent with the accompanying Order. All other claims will be dismissed.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE