| | |
|---|---|
| CASSANDRA McGUIRE,<br><br>Plaintiff,<br><br>v.<br><br>HIGHMARK HOLDINGS et al.,<br><br>Defendants. | Case No. 3:19-cv-00902<br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern |

To:     The Honorable Eli J. Richardson, District Judge

## **REPORT AND RECOMMENDATION**

Before the Court is Defendants Highmark Holdings, Enfield Management, Robbie King, and Glynda Shamwell's motion to dismiss pro se Plaintiff Cassandra McGuire's second amended complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for judgment on the pleadings under Rule 12(c). (Doc. No. 41.) McGuire, who proceeds *in forma pauperis*, has responded in opposition to the defendants' motion (Doc. No. 44), the defendants have replied (Doc. No. 46), and McGuire has filed a surreply without the Court's permission (Doc. No. 47).[1] For the reasons that follow, the Magistrate Judge will recommend that the Court deny the

---

[1]     On August 4, 2021, the Court received a filing from McGuire entitled "Supplemental Pleading" that McGuire states "respond[s] to the Defendant[s'] Motion to Dismiss." (Doc. No. 51, PageID# 325.) If McGuire wants to amend her complaint again, she must file a motion for leave to amend under Federal Rule of Civil Procedure 15 and this Court's Local Rule 15.01. *See* Fed. R. Civ. P. 15(a)(2); M.D. Tenn. R. 15.01 (motions to amend pleadings). The Court will not consider the "Supplemental Pleading" because it was not filed in compliance with these rules. To the extent McGuire intended the supplemental pleading to respond to the defendants' motion to dismiss, the time for her to do so has passed. *See* M.D. Tenn. R. 7.01(a)(3) (response) (providing that "any party opposing a motion must serve and file a memorandum of law in response . . . not later than fourteen (14) days after service of the motion").

defendants' motion to dismiss and allow McGuire's fair housing claims to proceed, but dismiss McGuire's employment discrimination claims under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

**I.      Background**

    **A.      Factual Background**[2]

In a prior order, the Court provided a detailed explanation of the facts McGuire alleged in her original complaint, which the Court broadly construed to include the documents McGuire attached to the pleading. (Doc. No. 7.) This Report and Recommendation will therefore summarize the factual allegations in McGuire's pleadings, focusing on the allegations that are relevant to the pending motion to dismiss.

        **1.      Whispering Oaks**

Enfield manages residential properties in Nashville, Tennessee, including the Whispering Oaks Apartments and the Biltmore Place Apartments. (Doc. No. 1.) Enfield hired McGuire as a leasing consultant in August 2017 and assigned her to work at Whispering Oaks. (*Id.*) McGuire

---

[2]     The operative pleading in this action is McGuire's second amended complaint, filed on September 8, 2020. (Doc. No. 29.) "Generally, amended pleadings supersede original pleadings." *Hayward v. Cleveland Clinic Found.*, 759 F.3d at 601, 617 (6th Cir. 2014); *see also* 6 Charles Alan Wright & Arthur R. Miller., *Federal Practice and Procedure* § 1476 (3d ed. updated Apr. 2021) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies . . . ."). "If, however, the party submitting the pleading clearly intended the latter pleading to supplement, rather than supersede, the original pleading, some or all of the original pleading can be incorporated in the amended pleading." *Clark v. Johnson*, 413 F. App'x 804, 811–12 (6th Cir. 2011); *see also* Wright & Miller, § 1476 ("[T]he original pleading, once superseded, cannot be utilized to cure defects in the amended pleading, unless the relevant portion is specifically incorporated in the new pleading."). Here, the Court has construed Docket Entry 29 as McGuire's second amended complaint (Doc. No. 39), and McGuire has made clear her intent that her second amended complaint supplement rather than replace her original complaint by expressly incorporating "[t]he facts[ ] and evidence" provided in her original complaint into her second amended complaint. (Doc. No. 29, PageID# 235, ¶ 2.) The Court will therefore construe her original and second amended complaints together.

2

Case 3:19-cv-00902   Document 52   Filed 08/06/21   Page 2 of 16 PageID #: 331

and five residents at Whispering Oaks had known disabilities. (*Id.*) McGuire's own disabilities include anxiety and a "chronic blockage in [her] heart." (*Id.* at PageID# 6, 10.)

McGuire's leasing consultant duties included "taking new applications, assisting with work orders, inspecting properties, continuing education, [and] monthly inspections, among regular office task[s]." (Doc. No. 29, PageID# 235, ¶ 1.) McGuire alleges that she soon noticed practices at Enfield that conflicted with company rules and the Fair Housing Act. (Doc. No. 29.) For example, McGuire alleges that a Whispering Oaks resident was not allowed to report housing problems because he was disabled and that an applicant was not allowed to fill out an application because of her anxiety. (Doc. No. 1.) McGuire also alleges that an assistant manager named Nell "ridiculed" an applicant for having "a bad hair weave" and an assistant manager laughed at and refused to assist an applicant who did not speak English, even though the assistant manager had access to translation resources. (*Id.* at PageID# 6.)

McGuire alleges that her co-workers verbally harassed her in meetings and wrongly accused McGuire of harassment because McGuire was "discussing fair housing violations, discrimination, [and] public safety," among other things. (*Id.* at PageID# 6.) McGuire emailed King to complain.[3] (Doc. No. 1.)

### 2. Biltmore Place

McGuire was transferred to Biltmore Place in November 2017 (Doc. Nos. 1, 29) and promoted to assistant manager in December 2017 (Doc. No. 1). McGuire alleges that a manager at Biltmore Place named Juan was negligent about building safety and treated lease applicants differently in violation of the Fair Housing Act. (*Id.*) McGuire expressed her concerns about Juan's

---

[3]  King's email signatures in the emails attached and incorporated by reference into McGuire's original complaint identify him as "President" of "Enfield Management Company, LLC" and "Managing Director" of "Highmark Holdings, LLC[.]" (Doc. No. 1, PageID# 22, 25.)

behavior and was told to stop performing fire safety and mold inspections. (*Id.*) McGuire also expressed concerns to Juan about building safety and the use of improper application documents that led to the misuse of government funds, and Juan mentioned McGuire's concerns to the district manager. (*Id.*) In early February 2018, McGuire emailed King expressing the same concerns. (Doc. Nos. 1, 29.) King forwarded the emails to Shamwell on February 7, 2018, and stated "[w]e need to let [McGuire] go today." (Doc. No. 1, PageID# 25.)

Enfield terminated McGuire's employment on February 14, 2018, after Shamwell and Juan met with McGuire to discuss company chain-of-command policies for reporting the issues raised in her emails to King. (Doc. No. 1.) McGuire alleges that she "was terminated for not turning [her] head to the risk[s]" she had reported. (*Id.* at PageID# 8.)

### 3. THRC Proceedings

McGuire filed a discrimination complaint with the Tennessee Human Rights Commission (THRC) on or about April 26, 2018, naming Enfield, King, Shamwell, and Highmark Biltmore Place, LP as respondents.[4] (Doc. No. 1.) McGuire alleged "that the Respondents were denying tenant applications on the basis of race, disability, religion, and national origin." (*Id.* at PageID# 36.) She further alleged that she twice emailed "King regarding the disparity in treatment of rental applications[,]" "met with . . . Shamwell and her direct supervisor . . . to discuss her concerns[,]" and was then terminated. (*Id.* at PageID# 36, 37.) The THRC reviewed McGuire's complaint "to determine jurisdiction under the Tennessee Human Rights Act (THRA), Title VII of the Civil Rights Act of 1964, as amended and/or Title VIII of the Civil Rights Act of 1968, as

---

[4] As the Court noted in a prior order, it appears that McGuire intended to name Highmark Biltmore, LP as a defendant in this action by suing Highmark Holdings. (Doc. No. 7.) "Highmark owned Biltmore Place Apartments, but it is unclear from the documents currently before the Court whether Highmark also owned Whispering Oaks Apartments." (*Id.* at PageID# 124 (citing Doc. No. 1, PageID# 36).)

amended [by the Fair Housing Act (FHA)]." (*Id.* at PageID# 62.) The THRC determined, based on McGuire's complaint, that she "engaged in a protected activity regarding housing discrimination and not employment." (*Id.*) It therefore "accepted and investigated" McGuire's complaint "as a housing complaint." (*Id.*) During the investigation, Highmark, Enfield, King, and Shamwell denied discriminating against McGuire and "assert[ed] that her termination was due to her failure to follow the chain-of-command and her inability to get along with her co-workers." (*Id.* at PageID# 37.)

The THRC issued a written notice of determination on August 9, 2019, finding evidence of two of the three required elements to prove a fair housing retaliation claim. (Doc. No. 1.) Specifically, the THRC found that McGuire engaged in protected activity under fair housing laws and was terminated, but found insufficient "evidence to suggest that there was a causal connection between [McGuire's] protected activity and her termination." (*Id.* at PageID# 38.) The THRC therefore determined that there was "no reasonable cause" to believe that Highmark, Enfield, King, and Shamwell violated Title VIII, as amended by the FHA, or the THRA, and declined to address whether the respondents committed "violations of any other provisions of the law." (*Id.* at PageID# 39.) McGuire contacted the THRC and "questioned that [her] allegations involved employment discrimination[,]" not just housing discrimination. (*Id.* at PageID# 62.) The THRC conducted "[a]nother review" and "determined it properly and thoroughly investigated the discrimination charge under the correct statute." (*Id.*)

McGuire requested that the THRC reconsider its no-cause determination and the THRC reconsidered McGuire's complaint. (Doc. No. 1.) On September 25, 2019, the THRC issued a written notice of determination after reconsideration, this time finding all three elements of a fair housing retaliation claim. (*Id.*) The THRC again found that McGuire "engaged in protected activity

5
Case 3:19-cv-00902   Document 52   Filed 08/06/21   Page 5 of 16 PageID #: 334

under the Fair Housing Act" and was terminated. (*Id.* at PageID# 80.) It further "found sufficient evidence to suggest that there was a causal connection between [McGuire's] protected activity and her termination" because there was a "lack of evidence to support" the respondents' proposed "legitimate non-discriminatory reason[s]" for firing McGuire. (*Id.*) The THRC therefore found "reasonable cause" to conclude that the respondents terminated McGuire's employment because she "engag[ed] in protected activity under the FHA." (*Id.* at PageID# 77.) It further found that the respondents violated the THRA and Title VIII, as amended by the FHA. (Doc. No. 1.) However, the THRC again declined to "address any potential violations of any other provisions of the law." (*Id.* at PageID# 81.)

### B. Procedural History

McGuire initiated this action on October 11, 2019, by filing a complaint against Highmark, Enfield, King, and Shamwell. (Doc. No. 1.) McGuire used a template form complaint for civil cases, checked a box indicating that this Court has federal question jurisdiction, and, when asked to "[l]ist the specific federal statutes . . . at issue in this case" wrote: "civil rights violations, housing, discrimination, harassment, retaliation, wrongful termination, [and] whistle blowing[.]" (*Id.* at PageID# 3.) She also wrote "see attached sheets[,]" referring to the eighty pages of documents she attached to her complaint, including records from the THRA proceedings. (*Id.*)

The Court granted McGuire's application to proceed *in forma pauperis* and screened her complaint under 28 U.S.C. § 1915(e)(2)(B). (Doc. No. 7.) Broadly construing the attachments to McGuire's complaint, the Court found that McGuire had stated colorable claims for retaliation in violation of the FHA, 42 U.S.C. § 3617, and the THRA, Tenn. Code Ann. § 4-21-301(a)(1), and referred these two claims "to the Magistrate Judge for further development." (Doc. No. 7, PageID# 128.) The Court further found, however, that McGuire "fail[ed] to state a claim" "[a]s to any other causes of action [McGuire] may be seeking to pursue in this case[.]" (*Id.*)

McGuire filed a motion for reconsideration, asking the Court to review additional allegations included in her motion "and reconsider allowing all [of her] claims to be heard." (Doc. No. 9, PageID# 132.) The Court denied McGuire's motion for reconsideration, finding that "[w]hat [McGuire] actually seeks to do through the pending motion . . . is amend the Complaint to cure the perceived deficiencies that led to dismissal of some of her potential claims." (Doc. No. 19, PageID# 188.) The Court further found that, because this action is referred to the Magistrate Judge for case management, "[w]hether [McGuire] may file an amended [c]omplaint, and if so, how she may go about it, is a matter best reserved for the Magistrate Judge . . . ." (*Id.* at PageID# 189.)

Enfield filed a motion for a more definite statement under Federal Rule of Civil Procedure 12(e). (Doc. No. 14.) McGuire filed a response (Doc. No. 16), and Highmark, King, and Shamwell later joined Enfield's motion (Doc. No. 17). On June 26, 2020, the Magistrate Judge granted the defendants' motion for a more definite statement, finding that McGuire's response was "best characterized as an attempt to amend her complaint, which is precisely the relief that the motion for a more definite statement seeks." (Doc. No. 24, PageID# 213.) The Magistrate Judge therefore ordered McGuire to file an amended complaint setting forth all of her claims for relief against each defendant by July 17, 2020. (Doc. No. 24.) The Magistrate Judge also denied McGuire's request that the Court appoint an attorney to represent her. (*Id.*)

On July 13, 2020, McGuire filed a document listing her factual and legal claims against the defendants in numbered paragraphs. (Doc. No. 26.) That document was docketed as a reply, but the Court construed it as McGuire's amended complaint on September 4, 2020. (Doc. No. 27.) On the same day, McGuire placed an unsigned motion to amend in the Court's filing drop box; however, because of the Labor Day holiday, McGuire's unsigned motion was not docketed until

7

Tuesday, September 8, 2020. (Doc. No. 28.) On the same day that her unsigned motion was docketed, McGuire placed a signed motion to amend in the Court's filing drop box; the signed motion was docketed on September 9, 2020. (Doc. No. 29.)

On September 23, 2020, the Magistrate Judge found that, "[b]ased on the timing of McGuire's motions to amend, it is not clear if she is seeking leave to file a second amended complaint or if she was unaware of the Court's order construing Docket Entry 26 as her amended complaint before she filed these motions." (Doc. No. 32, PageID# 256.) The Magistrate Judge therefore ordered McGuire "to file a notice by October 1, 2020, clarifying whether her motions to amend [we]re requesting permission to file a second amended complaint or, in the alternative, if she intend[ed] to proceed with the filing entered at Docket Entry 26 as the operative pleading." (*Id.* at PageID# 257.) On September 25, 2020, McGuire filed a notice stating that "Doc 29 is the signed Amended Complaint."[5] (Doc. No. 35, PageID# 262.) Highmark, Enfield, King, and Shamwell did not respond in opposition to McGuire's notice. The Magistrate Judge therefore granted McGuire leave to amend and construed Docket Entry 29 as her second amended complaint. (Doc. No. 39.)

McGuire's second amended complaint incorporates by reference "[t]he facts[ ] and evidence" in her original complaint and alleges that Highmark, Enfield, King, and Shamwell retaliated against her in violation of Title VII as well as Title VIII, as amended by the FHA, by terminating her employment. (Doc. No. 29, PageID# 235.) McGuire seeks monetary damages and asks the Court to determine an appropriate amount. (*Id.*)

---

[5] McGuire initially filed a notice on September 23, 2020, stating that "[s]he would like to proceed with Doc 26, which is a signed copy of the Amended Complaint" (Doc. No. 33, PageID# 259); however, McGuire's second notice explains that the amended complaint with which she wishes to proceed "was not Doc 26, it is actually Doc 29" (Doc. No. 35, PageID# 262).

On November 2, 2020, Highmark, Enfield, King, and Shamwell moved to dismiss McGuire's second amended complaint under Rule 12(b)(6) for failure to state a claim on which relief may be granted or, in the alternative, for judgment on the pleadings under Rule 12(c). (Doc. No. 41.) Aside from articulating the legal standards applicable to deciding motions under Rules 12(b)(6) and 12(c) under the Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the defendants' legal argument in support of their motion consists of the following three sentences:

> In this case, the Court has already determined, as part of McGuire's petition to file her complaint *in forma pauperis*, that all claims other than her purported claims of retaliation under the Fair Housing Act ("FHA") and the Tennessee Human Rights Act ("THRA") were subject to dismissal, leaving open Defendants['] rights to move of their own accord for dismissal of those claims as well pursuant to the provisions of Rule 12. Defendants respectfully submit that even with two (2) additional opportunities to amend her "complaint," McGuire's conclusory, overly generalized, "stream of consciousness" assertions in the documents the Court has construed as her First and Second Amended Complaints still do not rise to the requisite pleading standards required under Rule 8, *Twombly* and *Iqbal* as set forth herein. Her assertions lack any reasonable factual support, and accordingly, Defendants ask this Court for a dismissal of all such remaining "claims" in their entirety and with prejudice, or in the alternative, a judgment on the pleadings pursuant to Rule 12.

(Doc. No. 41-1, PageID# 284–85.)

McGuire argues in response that her pleadings support "all elements concerning each assertion of civil rights violations" and that "[t]he bottom line is, [she] reported discrimination[ ] and received adverse actions, including retaliation." (Doc. No. 44, PageID# 300.) The defendants reply that McGuire's pleadings

> can only be described as a series of generic, stream of consciousness style ramblings, nonsensically interspersed with purported synonyms and definitions of common words, admonishments to "pay attention" and alleged *prima facia* elements of types of claims, none of which can reasonably be construed as a "complaint" in the loosest legal usage of the word.

(Doc. No. 46, PageID# 308.) The defendants further argue that "continu[ing] to allow [McGuire] to utilize a 'shotgun approach' and incorporate by reference all of the roughly one hundred plus . . . random documents and each one of her prior 'pleadings' she has filed in this matter as 'evidence'" prevents them "from preparing a reasonable response and needlessly mak[es] Defendants' burden to prepare a response that much more difficult." (*Id.* at PageID# 309.) McGuire filed a surreply without the Court's permission relating additional facts regarding her employment and the retaliation she alleges that she experienced. (Doc. No. 47.)

## II. Legal Standard

The standard for resolving a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) mirrors the standard for resolving a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 886 (M.D. Tenn. 2018). The Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz*, 592 F.3d at 722 (quoting *Iqbal*, 556 U.S. at 678).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). A plaintiff must plead more than "labels and conclusions[,]" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of

'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because McGuire proceeds pro se, the Court construes her filings "'liberally'" and holds her complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**III.     Analysis**

   **A.     FHA and THRA Claims**

Liberally construed, McGuire's second amended complaint continues to assert retaliation claims under Title VIII, as amended by the FHA, and the THRA.[6] (Doc. No. 29.) As the Court explained when it screened McGuire's original complaint, "Tennessee courts have held that the legislature intended the Tennessee Human Rights Act to be coextensive with federal civil rights laws, and the Tennessee Supreme Court looks to federal interpretation for guidance in interpreting the THRA." (Doc. No. 7, PageID# 127 (quoting *Guevara v. UHM Props., Inc.*, No. 2:11-cv-2339, 2014 WL 5488918, at *3 (W.D. Tenn. Oct. 29, 2014)).)

The FHA and THRA prohibit "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection

---

[6] The Court liberally construed McGuire's original complaint to assert parallel FHA and THRA retaliation claims. (Doc. No. 7.) McGuire's second amended complaint expressly references Title VIII and Fair Housing laws. (Doc. No. 29.) The Court will therefore continue to liberally construe McGuire's second amended complaint to assert retaliation claims under the FHA and THRA.

11

therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b); *see also* Tenn. Code Ann. § 4-21-601(a)(2). Both statutes also prohibit discrimination against renters or "any person associated with" them on the basis of a renter's "handicap . . . ." 42 U.S.C. § 3604(f)(1)(C), (f)(2)(C); *see also* Tenn. Code Ann. § 4-21-601(b)(1) (prohibiting housing discrimination against buyers, renters, and persons associated with them on the basis of disability). The FHA defines "handicap" as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment," with the exception that the "term does not include current, illegal use of or addiction to a controlled substance . . . ." 42 U.S.C. § 3602(h)(1)–(3). The FHA further provides that

> [i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

*Id.* § 3617; *see also* Tenn. Code Ann. § 4-21-301(a)(1) (prohibiting retaliation). The Sixth Circuit has held that this provision "protects plaintiff who 'aided or encouraged' the housing rights enumerated in the statute" and "the scope of the statute extends to employers who cancel [employment] contracts in retaliation for Fair Housing Act advocacy." *Linkletter v. W. & S. Fin. Grp., Inc.*, 851 F.3d 632, 637, 638 (6th Cir. 2017).

This Court already found that McGuire's original complaint "stated a colorable retaliation claim under both the FHA and THRA." (Doc. No. 7, PageID# 128.) McGuire's second amended complaint alleges that, "[w]ithin a couple of months" of working for Enfield, McGuire "notic[ed] patterns inside the company that conflicted with the rules of the company, as well as Fair Housing rules." (Doc. No. 29, PageID# 235, ¶ 1.) McGuire alleges that "she sent a few emails to Robbie King, explaining what was happening in the Biltmore location in early February 2018, . . . after

. . . address[ing] [the issues] through Juan" and her district manager. (*Id.* at PageID# 237, ¶ 4.) The emails attached to her original complaint and incorporated by reference into her original and second amended complaint show that, on February 2, 2018, McGuire wrote in an email to King from a Biltmore Place email address that "[t]he rental policy is being changed, and if not kept up with it can violate Fair Housing." (Doc. No. 1, PageID# 22.) McGuire's February 2nd email also described two lease applicants whom Juan treated differently. (Doc. No. 1.) Further, an email that McGuire sent to King on February 7, 2018, states that she asked Juan if she should "report outside the company for Fair Housing" Act violations or "how d[id] he recommend that to be handled." (*Id.* at PageID# 26.) McGuire's February 7th email states that she was "studying . . . the Fair Housing [Act] because [she] continue[d] asking these questions and [was] not getting proper answers." (*Id.*) King forwarded another email that McGuire sent to him on February 7, 2018, to Shamwell and wrote: "Another one, below . . . . We need to let [McGuire] go today." (*Id.* at PageID# 25.) McGuire's employment was terminated on February 14, 2018. (Doc. No. 29.)

The Court finds that these facts, construed in the light most favorable to McGuire, support a reasonable inference that the defendants terminated McGuire's employment because she advocated for ensuring Enfield's compliance with FHA and THRA requirements. These allegations are therefore sufficient to state plausible retaliation claims under the FHA and THRA. *Cf. Linkletter*, 851 F.3d at 635.

The defendants' generalized arguments do not counsel otherwise. The defendants have not addressed the specific legal standard for pleading retaliation claims under the FHA and THRA. *Cf. Pewitte v. Hiniger*, No. 3:17-cv-00822, 2020 WL 2218754, at *18 (M.D. Tenn. May 6, 2020) (recommending denying motion for summary judgment where "defendants [did] not address[ ] the specific legal standards governing" plaintiff's claims and did "not analyze[ ] the relevant factual

13

and legal issues specific to [plaintiff's] particular claims"), *report and recommendation adopted* 2020 WL 5105404 (M.D. Tenn. Aug. 31, 2020). Nor have the defendants supported their argument that the Court should revisit its determination in the screening order to construe the documents attached to McGuire's original complaint as part of the pleadings. The defendants cite Charles Alan Wright and Arthur R. Miller's *Federal Practice and Procedure* in support of their argument that "excessive incorporation by reference" of the documents attached to McGuire's original complaint "only unnecessarily lengthens and confuses matters, barring Defendants from preparing a reasonable response and needlessly making Defendants' burden to prepare a response that much more difficult." (Doc No. 46, PageID# 309.) But that treatise expressly provides that "whether allegations in superseded pleadings should be permitted to be adopted by reference is properly left to the trial judge." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1326 (4th ed. updated Apr. 2021). The Sixth Circuit has held that that, "[i]f . . . the party submitting the [amended] pleading clearly intended the latter pleading to supplement, rather than supersede, the original pleading, some or all of the original pleading can be incorporated in the amended pleading." *Clark v. Johnson*, 413 F. App'x 804, 811–12 (6th Cir. 2011). Here, the Court has construed Docket Entry 29 as McGuire's second amended complaint (Doc. No. 39), and McGuire has made clear her intent that her second amended complaint supplement rather than replace her original complaint by expressly incorporating "[t]he facts[ ] and evidence" provided in her original complaint into her second amended complaint. (Doc. No. 29, PageID# 235, ¶ 2.)

The defendants' motion to dismiss should therefore be denied.

### B. Title VII Claims

McGuire's second amended complaint asserts that the defendants also retaliated against her in violation of Title VII. (Doc. No. 29.) The defendants have not provided any additional arguments in support of dismissing McGuire's Title VII retaliation claims. However, because

14

McGuire proceeds *in forma pauperis*, this Court is obligated to dismiss any claim in the operative pleading that "fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii). The standard for reviewing pleadings under § 1915(e)(2) is the same as the standard for evaluating motions to dismiss under Rule 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Title VII further provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter . . . ." *Id.* § 2000e-3(a).

Construing her pleadings liberally, as it must, the Court finds that McGuire has not alleged sufficient facts to support a claim that the defendants retaliated against her for opposing employment discrimination. McGuire's second amended complaint alleges generally that she was "harassed" for "protecting residents[ ] and applicants from discrimination . . . ." (Doc. No. 29, PageID# 236, ¶ 4.) Her original complaint includes several specific examples of Whispering Oaks employees mistreating residents and applicants. (Doc. No. 1.) But McGuire has not alleged sufficient facts to support a reasonable inference that she opposed discrimination on the basis of race, color, religion, sex, or national origin against herself or any other *employee*. Further, McGuire has not alleged sufficient facts to support a reasonable inference that the defendants terminated her employment because she opposed such employment discrimination. McGuire alleges that, after she complained about experiencing harassment at Whispering Oaks, the defendants transferred her

15
Case 3:19-cv-00902    Document 52    Filed 08/06/21    Page 15 of 16 PageID #: 344

McGuire proceeds *in forma pauperis*, this Court is obligated to dismiss any claim in the operative pleading that "fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii). The standard for reviewing pleadings under § 1915(e)(2) is the same as the standard for evaluating motions to dismiss under Rule 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Title VII further provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter . . . ." *Id.* § 2000e-3(a).

Construing her pleadings liberally, as it must, the Court finds that McGuire has not alleged sufficient facts to support a claim that the defendants retaliated against her for opposing employment discrimination. McGuire's second amended complaint alleges generally that she was "harassed" for "protecting residents[ ] and applicants from discrimination . . . ." (Doc. No. 29, PageID# 236, ¶ 4.) Her original complaint includes several specific examples of Whispering Oaks employees mistreating residents and applicants. (Doc. No. 1.) But McGuire has not alleged sufficient facts to support a reasonable inference that she opposed discrimination on the basis of race, color, religion, sex, or national origin against herself or any other *employee*. Further, McGuire has not alleged sufficient facts to support a reasonable inference that the defendants terminated her employment because she opposed such employment discrimination. McGuire alleges that, after she complained about experiencing harassment at Whispering Oaks, the defendants transferred her

to Biltmore Place and promoted her. (Doc. Nos. 1, 29.) McGuire's emails to King in February 2018 allege that Juan, her manager at Biltmore Place, "ignored" her suggestions for "Fire Truck Day (which is free) or Community Policing (which is free)" and "a fun quote [she suggested] for the chalk board" and that Juan told McGuire that "he [did not] have time to teach" her assistant manager duties. (Doc. No. 1, PageID# 22.) But McGuire did not tell King that she thought Juan's actions were based on her race, color, religion, sex, or national origin, and she did not mention Title VII, even though she specifically mentioned the FHA. (Doc. No. 1.) McGuire therefore has not adequately alleged a plausible claim that the defendants terminated her employment in retaliation for her opposing unlawful employment practices under Title VII. The Court should therefore dismiss McGuire's Title VII retaliation claims under 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the defendants' motion to dismiss (Doc. No. 41) be DENIED and that the Court DISMISS McGuire's Title VII retaliation claims in the second amended complaint under 28 U.S.C. § 1915(e)(2)(B)(ii).

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 6th day of August, 2021.

*[signature]*
ALISTAIR E. NEWBERN
United States Magistrate Judge